## PEOPLE v HENDERSON

1. CRIMINAL LAW—EVIDENCE—CONSTITUTIONAL LAW—VOICE EXEMPLARS—SELF-INCRIMINATION.

A defendant's Fifth Amendment privilege against self-incrimination is not violated by the use of voice exemplars offered as evidence solely to measure the physical properties of the defendant's voice, when the exemplars are not offered for the substance of what is contained in the recordings (US Const, Am V).

2. SEARCHES AND SEIZURES—EVIDENCE—CONSTITUTIONAL LAW.

The Fourth Amendment provides no protection for what a person knowingly exposes to the public, therefore, facial characteristics, handwriting and the characteristics of one's voice may not be protected; nevertheless, the method by which such evidence is obtained is subject to the reasonableness requirements of the amendment (US Const, Am IV).

3. SEARCHES AND SEIZURES—CRIMINAL LAW—EVIDENCE—VOLUNTARY CONSENT—CONSTITUTIONAL LAW.

The Fourth and Fourteenth Amendments require the state to demonstrate, when it attempts to justify a search based upon the voluntary consent of an individual not in custody, that such consent was in fact voluntarily given and not the result of duress or coercion, express or implied; voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecutor is not required to show such knowledge as a prerequisite to establishing voluntary consent (US Const Ams IV, XIV).

Appeal from Recorder's Court of Detroit, Samuel C. Gardner, J. Submitted May 10, 1976, at Detroit. (Docket No. 21855.) Decided June 14, 1976.

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 349, 351–353, 368.
[2] 68 Am Jur 2d, Searches and Seizures §§ 4–6.
[3] 68 Am Jur 2d, Searches and Seizures § 46 *et seq.*

Larry Henderson was charged with malicious use of a telephone. Defendant's motion to suppress certain evidence was granted and the case was dismissed. The people appeal. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Thomas M. Khalil,* Assistant Prosecuting Attorney, for the people.

*Richard L. Ruby,* for defendant.

Before: R. M. MAHER, P. J., and M. J. KELLY and D. C. RILEY, JJ.

M. J. KELLY, J. This is an appeal by right of the prosecutor from a trial court order suppressing certain evidence and dismissing the misdemeanor complaint against defendant.

Defendant was charged with malicious use of a telephone in that he had falsely and deliberately reported by telephone that a police officer had been injured, suddenly taken ill, died, or had been the victim of a crime or accident. MCLA 750.540e(1)(b); MSA 28.808(5)(1)(b). Defendant filed a motion to suppress certain tape recordings and voice prints, the motion was granted after an evidentiary hearing, and the case was dismissed. Plaintiff now appeals and challenges the trial court's ruling on the motion to suppress evidence.

The factual background of this case, in summary, is that the Detroit Police Department is alleged to have received a telephone call on April 13, 1974, falsely informing them that a patrolman had been shot and needed assistance. This tele-

phone conversation was recorded. For reasons not made clear in this record, defendant was suspected of making the telephone call.[1]

The only testimony received at the suppression hearing was that of a Detroit police officer who stated that he went to defendant's home, told defendant that the police had been receiving false telephone reports and that those calls had been tape recorded, and asked defendant to allow him to obtain a tape recording of defendant's voice which would then be compared to the tapes of the recorded calls. The police officer stated that defendant thereupon volunteered to have his voice recorded.

Upon questioning by the trial judge, the officer acknowledged that no search warrant had been obtained with respect to obtaining the taped recording of defendant's voice and that defendant had not been advised, prior to the recording session, of his rights to remain silent or to an attorney.

Another tape recording was obtained at a subsequent time, requested by the police because of a defect in the first tape, and the police officer stated that defendant again voluntarily participated in this taping. Again no search warrant had been obtained, nor was defendant apprised of his right to an attorney.

The prosecutor stipulated that the tape record-

---

[1] Apparently this defendant had been suspected of making similar phone calls in the past. The trial judge observed:

"They took the tape recording made of your client and they are saying that it is the same as that recorded voice in the past, is that right?"

* * *

"I have been further advised, that this is not the first time that this charge has been lodged against you. As a matter of fact, there was a confession in a prior case and that was also dismissed on a technicality."

ing of defendant's voice, and voice prints prepared from those tapes, were to be offered only for the physical characteristics of defendant's voice and not for the substance of what was said on those tapes.

The trial court rejected defendant's claim that his Fifth Amendment privilege against self-incrimination would be violated by the use of the tape recordings of his voice as evidence at trial. We agree. The use of voice exemplars solely to measure physical properties of the voice does not involve the Fifth Amendment privilege against self-incrimination. *United States v Dionisio*, 410 US 1; 93 S Ct 764; 35 L Ed 2d 67 (1973), *People v Tobey*, 60 Mich App 420; 231 NW2d 403 (1975).

The Fourth Amendment considerations involved in obtaining a voice exemplar are more complex. In *Dionisio, supra,* the United States Supreme Court was faced with deciding the applicability of the Fourth Amendment to the compulsory production of voice exemplars pursuant to a subpoena by a grand jury. The Court explained the analysis to be used in evaluating Fourth Amendment claims arising in that and related situations as follows:

"[T]he obtaining of physical evidence from a person involves a potential Fourth Amendment violation at two different levels—the 'seizure' of the 'person' necessary to bring him into contact with government agents, see *Davis v Mississippi*, 394 US 721 [89 S Ct 1394; 22 L Ed 2d 676 (1969)], and the subsequent search for and seizure of the evidence. In *Schmerber [v California*, 384 US 757; 86 S Ct 1826; 16 L Ed 2d 908 (1966)], we found the initial seizure of the accused justified as a lawful arrest, and the subsequent seizure of the blood sample from his body reasonable in light of the exigent circumstances.

"And in *Terry [v Ohio* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968)], we concluded that neither the initial

seizure of the person, an investigatory 'stop' by a policeman, nor the subsequent search, a pat-down of his outer clothing for weapons, constituted a violation of the Fourth and Fourteenth Amendments. The constitutionality of the compulsory production of exemplars from a grand jury witness necessarily turns on the same dual inquiry—whether either the initial compulsion of the person to appear before the grand jury, or the subsequent directive to make a voice recording is an unreasonable 'seizure' within the meaning of the Fourth Amendment." 410 US at 8–9.

Applying this analysis to the facts, the Court concluded that a grand jury subpoena to testify was not a seizure of the person in the Fourth Amendment sense. This holding was based on the functions and powers of the grand jury to investigate crimes as well as on the historical obligation of citizens to appear and give evidence before a grand jury. *Dionisio* was thus distinguished from *Davis v Mississippi,* 394 US 721; 89 S Ct 1394; 22 L Ed 2d 676 (1969), where the Fourth Amendment violation prohibiting the use of the fingerprints of the defendant lay not in the taking of the fingerprints, as such, but in the initial seizure of the defendant, characterized as a "lawless dragnet detention", which permitted the fingerprints to be obtained.

After thus concluding that Dionisio's compelled appearance before the grand jury would not constitute an unreasonable seizure of his person, the Court turned to the second step of its analysis, that is, whether the Fourth Amendment would prevent a grand jury from ordering a witness who had been subpoenaed to testify before it to produce a voice exemplar. It concluded that such an order would not infringe upon any interest protected by the Fourth Amendment, reasoning that the physi-

cal characteristics of a man's voice, like his facial characteristics or his handwriting, were constantly exposed to the public, and the Fourth Amendment provides no protection for what a person knowingly exposes to the public.

*Dionisio* and *Davis,* then, indicate that while the physical characteristics of a person's voice may not be protected by the Fourth Amendment because of its constant exposure to the public, the method by which a state may obtain a voice exemplar is subject to the reasonableness requirements of that amendment. Any compulsory voice exemplar will involve at least to some degree a seizure of the person of the suspect "necessary to bring him into contact with government agents", and such a seizure, outside of the grand jury subpoena context of *Dionisio,* will be subject to Fourth Amendment strictures.

We need not decide in this case the precise contours of the protections required by the Fourth Amendment when the police seek voice exemplars, handwriting exemplars, fingerprints or the like from a suspect not in custody. Questions as to when judicial authorization may be required are not addressed here. When consent is freely given, authorization is unnecessary. Here the prosecutor attempted to show that defendant had voluntarily consented to participate in the tape recording of his voice.

The trial judge ruled upon hearing the testimony of the police officer that no warrant had been obtained and that defendant had not been informed of his right to an attorney or of other rights and that no exception to a warrant requirement could be shown. The tape recordings and voice prints were ordered suppressed and the case dismissed, the trial judge stating:

"I say that the only way you can show the consent is to show that the defendant knew what he was giving up in order to consent."

This is not the standard to determine whether there has been voluntary consent by an individual not in custody to a procedure which, in the absence of consent, would infringe rights protected by the Fourth Amendment to the United States Constitution and Art 1, § 11 of the State Constitution. In *People v Reed,* 393 Mich 342, 363; 224 NW2d 867 (1975), *cert den,* 422 US 1044; 95 S Ct 2660; 45 L Ed 2d 701 (1975), the Michigan Supreme Court accepted the following test enunciated by the United States Supreme Court in *Schneckloth v Bustamonte,* 412 US 218, 248–249; 93 S Ct 2041; 36 L Ed 2d 854 (1973):

"[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecutor is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent."

A similar standard should have been used by the trial judge in this case, with the voluntariness of defendant's agreement to participate in the taping procedure to be determined from all of the circumstances. The trial court's decision to suppress the tape recordings and voice prints and to dismiss the case must therefore be reversed. We cannot, however, follow the suggestion of the prosecutor and find that voluntary consent was proven at the

evidentiary hearing or order that the evidence be allowed. The trial court's ruling that the prosecutor *could not* prove voluntary consent by defendant because defendant had not been informed of his *Miranda*[2] rights precluded presentation of evidence of all of the circumstances relevant to deciding the question. Defendant should be given an opportunity to present his own version of the conversations which the officers say constituted consent. This stage of the hearing was not reached below because of the trial court's incorrect application of *Miranda*.

Reversed and remanded for proceedings consistent with this opinion.

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).