PEOPLE v SMITH
PEOPLE v HOLLOWAY
PEOPLE v GILMORE

1. CRIMINAL LAW—SEPARATE TRIAL—JUDGES' DISCRETION—PREJUDICE.

The decision of whether to hold joint or separate trials of codefendants is discretionary with the trial court and a defendant who moves for a separate trial must show that his substantial rights will be prejudiced by a joint trial.

2. CRIMINAL LAW—SEPARATE TRIAL—SUPPORTING AFFIDAVITS—INCONSISTENCIES BETWEEN DEFENSES.

A trial court does not abuse its discretion in denying a codefendant's motion for a separate trial unless the motion for such trial is supported by an affidavit defining the inconsistencies between the defenses of the parties.

3. CRIMINAL LAW—SEPARATE TRIAL—CODEFENDANTS—TESTIMONY OF CODEFENDANTS.

A trial court did not abuse its discretion by denying the motions of codefendants for separate trials where the only substantial claims made by the codefendants were that in a joint trial they could not call their codefendants to testify or were denied their right of confrontation; codefendants, even if tried separately, cannot be compelled to testify against their will.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 75 Am Jur 2d, Trial §§ 17–24.
Right to severance where two or more persons are jointly accused. 131 ALR 917.
[4] 40 Am Jur 2d, Homicide §§ 310–314.
[5, 6] 58 Am Jur 2d, New Trial § 56.
75 Am Jur 2d, Trial § 192.
[7, 10] 21 Am Jur 2d, Criminal Law § 368.
[8] 4 Am Jur 2d, Appeal and Error §§ 79, 80.
[9] 21 Am Jur 2d, Criminal Law §§ 337, 343, 344, 349.
[11] 75 Am Jur 2d, Trial §§ 152–157.
[12] 30 Am Jur 2d, Evidence §§ 1124–1130.

4. Criminal Law—Evidence—Homicide—Rebuttal Testimony—
   Evidence of Other Crime.

> Testimony that an alleged party to a kidnapping and two homicides himself had been killed by the same gun used to kill the other two victims was properly admitted as rebuttal testimony where the testimony of one of the defendants implicated the party as the sole participant in the crime; this testimony did not improperly inject evidence of another crime into the case because its relevancy as rebuttal evidence outweighed its prejudicial effect.

5. Appeal and Error—Criminal Law—Prosecutor's Remarks—
   Failure to Object.

> A defendant's failure to object to allegedly improper remarks made by the prosecutor during closing argument precludes appellate review unless it can be said that an objection and the appropriate curative instruction could not have eliminated the prejudice arising from the prosecutor's statements.

6. Criminal Law—Prosecutor's Remarks—Opportunity to Alter
   Testimony—Harmless Error.

> A remark by a prosecutor in his closing argument that the presence of the defendants in court gave them the opportunity to alter their testimony did not result in reversible error where no objection was made at trial, a curative instruction may have removed any error, and in the full context of the argument the error was harmless.

7. Criminal Law—Evidence—Voiceprints—Standing to Object.

> A defendant has no standing to object to the admission of voiceprints into evidence where the purpose of the admission was limited solely to use against his codefendant.

8. Appeal and Error—Credibility of Witnesses.

> A trial court's estimate of the credibility of a witness will not be overturned by the Court of Appeals where that estimate is determinative of the legal validity of the issuance of a search warrant.

9. Witnesses—Criminal Law—Refusal to Testify—Preliminary
   Examination Testimony.

> Testimony of a witness taken at a preliminary examination, at which the witness was thoroughly cross-examined, is admissible at the trial at which the witness refuses to testify; the trial court in such circumstances may properly rule that the witness is unavailable to testify.

10. CRIMINAL LAW—IDENTIFICATION—VOICEPRINTS—MIRANDA WARNINGS.

   A voice exemplar used solely to measure the physical properties of a defendant's voice for purposes of identification and not for the testimonial or communicative content of what was said is admissible into evidence where the exemplar was taken from a suspect already in custody regardless of whether the suspect was given prior *Miranda* warnings.

11. CRIMINAL LAW—TRIAL—REOPENING OF CASE—WITNESSES.

   A trial court properly allowed the prosecution to reopen its case, after the defendant had begun presentation of his case, for the purpose of securing testimony of a previously unavailable witness where the witness was a res gestae witness who had just recently returned to the jurisdiction.

12. CRIMINAL LAW—EVIDENCE—VERDICT—SUFFICIENCY OF EVIDENCE.

   Evidence is insufficient to support a verdict of guilty if it could not support a finding of guilty beyond a reasonable doubt because one or more of the essential elements of the crime is not proved.

Appeal from Wayne, James N. Canham, J. Submitted October 5, 1976, at Detroit. (Docket Nos. 27045, 21830, 24016.) Decided February 2, 1977. Leave to appeal applied for.

Byron A. Smith, Jerome Holloway and Geary Gilmore were convicted of murder committed in the perpetration of a kidnapping and of kidnapping. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training and Appeals, and *Robert M. Morgan,* Assistant Prosecuting Attorney, for the people.

*George E. Lee,* for defendant Byron A. Smith on appeal.

*Fred K. Persons,* for defendant Jerome Holloway on appeal.

*Carl Ziemba,* for defendant Geary Gilmore on appeal.

Before: V. J. BRENNAN, P. J., and BRONSON and BASHARA, JJ.

V. J. BRENNAN, P. J. Defendants were tried jointly and convicted by a Wayne County Circuit Court jury of murder committed in the perpetration of a kidnapping, MCLA 750.316; MSA 28.548, and kidnapping, MCLA 750.349; MSA 28.581. All three defendants were sentenced to concurrent life terms. All three defendants appeal as a matter of right.

In simplified terms, the facts of this matter arose in the following order. On December 1, 1973, Keith Arnold and Gerald Kraft, aged six years and eight years respectively, disappeared in late afternoon while playing near their homes on Inverness in the city of Detroit.

At 9 o'clock that evening, Roy Hillyer, a friend of the Arnold family, received a telephone call demanding $53,000 ransom for the return of the children. Police were notified immediately and telephone surveillance was established.

Two subsequent calls were received on December 1 and December 2, 1973, one taken by Marjorie Arnold, the mother, and one by Linda Ellis, Keith Arnold's sister. Both calls demanded ransom in the same general amount. Linda Ellis later testified that the calls she received all seemed made by the same person.

As ordered, Roy Hillyer went to a specified public telephone booth on December 2, 1973,

where he received a call instructing him to deliver a bag with the ransom to an address on Griggs Street. The delivery was made with a dummy ransom bag. Meanwhile, police had established a surveillance at the telephone booth. After some moments, officers observed defendant Smith come to the booth, lift the receiver and look around. Testimony also placed defendant Holloway in the immediate area of the dummy drop at the same time.

On December 4, 1973, the Wayne County Sheriff's office reported finding the boys' bodies in two fields located in Romulus, Michigan. The boys had each been shot twice in the head from the same weapon. Neighbors reported hearing the shots the previous evening about 7 o'clock.

At trial, various prosecution witnesses placed all three defendants and the two kidnapped boys in the 14th Street apartment of Fannie Johnson, sister-in-law of defendant Gilmore, on the evening of December 1, 1973. The two boys remained there until December 3, 1973. At least one of the defendants was there at all times during this period. On the morning after the boys' bodies were discovered, police found defendant Gilmore at an apartment on Schaeffer Road and placed him under arrest. Defendant Smith was arrested on December 4, 1973 in the company of an acquaintance, Lucinda Prewitt. Defendant Holloway voluntarily surrendered himself to police on December 5, 1973.

On appeal, because the basic legal questions presented by defendants Gilmore, Smith and Holloway are very similar, we will attempt to discuss them together. Where distinct allegations are raised, we will address them separately.

Defendants Gilmore, Smith and Holloway all contend that reversible error occurred when the

trial court denied their pretrial motions for severance. We do not agree.

The decision whether to hold joint or separate trials is discretionary with the trial court. MCLA 768.5; MSA 28.1028.[1] *People v Hurst,* 396 Mich 1, 11; 238 NW2d 6 (1976). In moving the court for separate trial, defendant must "show that his substantial rights will be prejudiced by a joint trial". *People v Scott,* 61 Mich App 91, 94; 232 NW2d 315 (1975). See *People v Schram,* 378 Mich 145, 156; 142 NW2d 662 (1966). A supporting affidavit defining the inconsistencies between the defenses of the parties is required before an abuse of discretion will be found. *People v Mullane,* 256 Mich 54, 56; 239 NW 282 (1931).

No affidavits were attached to defendants' motions. Nor did the statements contained in defendants' motions adequately assert "the full scope of the antagonism between his and his co-defendant's defenses". *People v Markham,* 19 Mich App 616, 635; 173 NW2d 307 (1969). The only substantial claim made by defendants Gilmore and Smith is that they could not call their co-defendants to testify in a joint trial; and this claim is largely vitiated by decisions indicating that co-defendants, even if tried separately, cannot be compelled to testify against their will. *People v Merritt,* 396 Mich 67, 84, n 18; 238 NW2d 31 (1976); *People v Van Alstine,* 57 Mich 69, 82; 23 NW 594 (1885). In the same vein, authority exists to answer defendant Holloway's allegation that he was denied his right of confrontation in a joint trial where he was not allowed to cross-examine his co-defendants. *State v Moore,* 101 NW2d 579, 587 (ND, 1960). We

[1] "When 2 or more defendants shall be jointly indicted for any criminal offense, they shall be tried separately or jointly, in the discretion of the court." MCLA 768.5; MSA 28.1028.

find no abuse in the trial court's denial of the respective motions.

Neither do we feel the trial court erred by failing to grant defendants Gilmore and Smith a separate trial *sua sponte* after the closing argument by defendant Holloway. *People v Rogers,* 39 Mich App 157, 161; 197 NW2d 292 (1972). Further, we do not even perceive how the remarks of defendant Holloway's counsel concerning Holloway's mental state, which counsel couched in biblical terms, could incriminate defendants Gilmore and Smith. *People v Hurst, supra* at 4.

Defendants Gilmore and Smith next contend the trial court abused its discretion by allowing rebuttal evidence that Gary Braceful, a person connected with the case, had been killed by the same gun used to kill the two boys.

Gary Braceful was mentioned frequently during the trial. He was present numerous times during the period the boys were being held at the 14th Street apartment. Defendant Gilmore's testimony clearly implicated Braceful as the sole party to the crime. Consequently, objection arose to police rebuttal indicating that the gun which killed Braceful was the same gun used to kill the two boys.

We feel the police testimony was proper rebuttal, not improper evidence of another crime. *People v Utter,* 217 Mich 74, 83; 185 NW 830 (1921). Therefore, we find no abuse of discretion. *People v Ames,* 60 Mich App 168, 172; 230 NW2d 360 (1975). See *People v Williams,* 386 Mich 565, 571–573; 194 NW2d 337 (1972). Evidence introduced by defendant Gilmore inculpating Braceful as the sole participant in the crime clearly justifies prosecution rebuttal. We also believe this testimony regarding the gun did not improperly inject another crime into the case where its relevancy as rebuttal

evidence was found by the trial court to outweigh its prejudicial effect.

Defendants Gilmore and Holloway argue next that the prosecution's summation was improper. We do not agree.

No objection to any of those comments made was raised at trial. In such circumstances, the remarks will not be reviewed unless the following obtains:

"The general rule in Michigan is that a defendant's failure to object to allegedly improper remarks made by the prosecutor during closing argument precludes appellate review unless it can be said that an objection and the appropriate curative instruction could not have eliminated the prejudice arising from the prosecutor's statements. *People v Tarpley,* 41 Mich App 227; 199 NW2d 839 (1972), *People v Humphreys,* 24 Mich App 411; 180 NW2d 328 (1970)." *People v McLendon,* 51 Mich App 543, 547; 215 NW2d 742 (1974).

Viewing the allegedly improper comments within the full context in which they were made, we feel the remarks were not so improper that they could not have been corrected by a curative instruction. *People v Scott,* 65 Mich App 657, 659–660; 237 NW2d 602 (1975). See *People v Blake,* 58 Mich App 685, 688; 228 NW2d 519 (1975). We decline to review them now.

Error is next alleged because the prosecution stated in summation that defendants' presence in court gave them opportunity to alter their testimony.

No objection was made to these comments. Consequently, under the standard applicable to determine whether we will review prejudicial remarks of prosecution in a closing argument, we find no basis to believe a curative instruction would not

have removed any error. *People v Scott, supra* at 659–660. We also note that this Court has found no error in argument by prosecution that a witness had an opportunity to fabricate. *People v Couch,* 49 Mich App 69, 72; 211 NW2d 250 (1973).

However, defendants maintain a constitutional violation of their right to be present at trial. *People v Montgomery,* 64 Mich App 101, 103; 235 NW2d 75 (1975). We feel the remark was inadvisable. However, in the full context of the summation, we believe the error was harmless. *People v Christensen,* 64 Mich App 23, 32–33; 235 NW2d 50 (1975). We decline to reverse on this ground.

Defendant Gilmore contends that the trial court erred in admitting voiceprints of the telephone calls demanding ransom and in limiting the jury's use of them. We disagree.

The evidence was not offered by the prosecution against defendant Gilmore but was solely limited to use against co-defendant Holloway. Therefore, we find defendant Gilmore has no standing to object to its admission. For our authority on this proposition, finding none in Michigan, we turn to the Federal courts. *United States v Rangel,* 488 F2d 871 (CA 5, 1974); *United States v Martinez,* 428 F2d 86, 89 (CA 6, (1970). However, we might mention that we do discuss the merits of the voiceprint's admissibility in response to objection by defendant Holloway and find them properly admitted.

As to whether the trial court correctly limited the jury in his charge to determining the credibility of the expert testimony regarding the voiceprint identification, we conclude again that neither defendant Gilmore nor defendant Smith have standing in the matter. *United States v Rangel, supra* at 872. In any case, we do not believe the

instruction deprived defendants of their right to a jury trial. The instruction was proper.

Defendant Gilmore argues that a search warrant issued for the 14th Street apartment was based on previous illegal activity.

The resolution of this question is entirely factual. Apparently, police early on in the investigation had obtained a tip from the secret witness program directing them to the 14th Street apartment. Officers went to the residence, and entered through an unlocked window when they received no response at the front door. However, testimony also indicated that the warrant subsequently issued was a totally distinct process, based on information given by one Jacquelin Wesley. The court carefully ascertained to its satisfaction that no connection between the two operations existed.

We will not second guess the trial court's estimate of witness credibility, which we feel determinative of this allegation. *People v Paille #2,* 383 Mich 621, 627; 178 NW2d 465 (1970). We find no abuse of discretion. We also note that defendant Holloway lacks standing to raise this question on appeal. *People v Scott,* 44 Mich App 462, 464; 205 NW2d 291 (1973). He had no possessory interest or control in the apartment.

Defendant Holloway argues that error occurred when the trial court admitted the preliminary examination testimony of Fannie Johnson, who claimed her privilege against self-incrimination at trial.

The record indicates that witness Johnson, though not offered immunity, had refused to testify at trial regardless. At preliminary examination, defendant Holloway thoroughly cross-examined the witness. Under these circumstances, the trial court was correct in ruling that she was

unavailable to testify and in admitting the preliminary examination testimony. *People v Pickett,* 339 Mich 294, 306–307; 63 NW2d 681 (1954). We find no error.

Defendant Holloway alleges next that the trial court improperly admitted voiceprint identification testimony of him where the exemplar of his voice was taken without *Miranda*[2] warnings.

We immediately note that voiceprints are admissible in Michigan. *People v Henderson,* 69 Mich App 418, 421; 245 NW2d 72 (1976); *People v Tobey,* 60 Mich App 420, 427–428; 231 NW2d 403 (1975).

What we hold here is that a voiceprint identification of a suspect already in custody is admissible regardless of whether prior *Miranda* warnings were given. Accord, *People v Smogoleski,* 14 Mich App 695, 700; 166 NW2d 14 (1968). To this end, we find no violation of defendant's Fifth Amendment privilege against self-incrimination by the admission of these voiceprints as identification evidence at trial. *People v Henderson, supra* at 427.

The voiceprint was used solely to measure the physical properties of defendant Holloway's voice, "and not for the testimonial or communicative content of what was to be said". *People v Tobey, supra,* at 428. We do not believe *Miranda* applies in this context. *People v Smogoleski, supra* at 700. We find no error.

Error is next assigned to the trial court's decision to allow the prosecution to reopen its case after defendant Holloway had begun his case in order to secure testimony of a previously unavailable witness.

Ample authority can be found for the proposition that the trial court may "reopen a case for

---

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

the purpose of admitting testimony in behalf of either the prosecution or the defense". *People v Baker,* 332 Mich 320, 324; 51 NW2d 240 (1952). See *People v Cissom,* 39 Mich App 80, 81–82; 197 NW2d 282 (1972).

Where proof existed that the witness was a res gestae witness who had only recently returned to the jurisdiction, we can find no abuse of discretion in the court's decision.

Lastly, defendant Holloway contends that insufficient evidence existed to support the verdict. We do not agree.

In testing whether sufficient evidence exists, this Court recently stated the following standard:

"A challenge to the sufficiency of the evidence is measured by the following test—the evidence is insufficient if it could not support a finding of guilty beyond a reasonable doubt because one or more of the essential elements of the crime is not proved. *People v Kremko,* 52 Mich App 565, 574; 218 NW2d 112 (1974)." *People v Smith,* 68 Mich App 551, 555; 243 NW2d 681 (1976) (M. J. KELLY, J., dissenting).

The defendant was charged with kidnapping and felony murder. The required proof for felony murder in this case was that the murder was perpetrated in the commission of a kidnapping. We find the following record evidence to support this charge:

(1) the defendant's voice was identified as the one that was on the tape of the ransom call by a person that heard the ransom call;

(2) the defendant was acquainted with the Arnold family;

(3) the defendant was observed by the police in the vicinity of the ransom;

(4) Miss Payne testified that the defendant told her that he would come into some big money;

(5) the defendant, who was present in the 14th Street apartment with the two boys, ordered Miss Payne to stop talking to them, even in the absence of the other two defendants;

(6) Miss Payne testified that defendant had a gun in his hand while she was in the apartment;

(7) defendant asked Miss Payne if she believed in kidnapping;

(8) defendant told Miss Payne that he told them not to do it and that the little boys asked for his help;

(9) on the evening the little boys disappeared defendant left the apartment with his co-defendant and returned there with the little boys; and

(10) defendant left the apartment with his co-defendants and the little boys on the night of the murder.

We believe these facts clearly sustain the jury verdict and show more than defendant Holloway's "mere presence" during the crime. Therefore, we find no error.

Having reviewed all the alleged errors and having discussed those we consider of merit, we find no grounds to reverse the proceedings below.

Affirmed.