PEOPLE v WEBB

Docket No. 27284. Submitted October 12, 1977, at Detroit.—Decided March 21, 1978. Leave to appeal applied for.

Defendant Robert Lee Webb and a codefendant, one Henderson, were charged with two counts of first-degree murder. Prior to their joint trial defendant Webb filed a motion to sever. The motion was denied. Defendant was convicted of the charged offenses by a jury in Detroit Recorder's Court, Joseph E. Maher, J. The defendant appeals. *Held:*

A decision to try codefendants jointly or separately is in the discretion of the trial court and, where a motion to sever has been denied, it must be shown that the joint trial worked to prejudice the rights of at least one of the defendants before an abuse of discretion can be found. A defendant is entitled to a separate trial from a codefendant who, it appears, may testify to exculpate himself and incriminate the defendant seeking a separate trial. A defendant's conviction should be reversed and the matter remanded where the trial court denied the motion to sever and the defendant seeking severance did have his right to a fair trial prejudiced by the joint trial.

Reversed and remanded.

Judge D. E. HOLBROOK dissented. He would hold that the decision to hold joint or separate trials was discretionary with the trial court; a supporting affidavit defining the inconsistencies between the defenses of the parties was required before an abuse of discretion could be found.

OPINION OF THE COURT

1. CRIMINAL LAW—TRIAL—JOINDER—DISCRETION OF TRIAL COURT— SEVERANCE—SHOWING OF PREJUDICE.

A decision to try codefendants jointly or separately is in the

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 75 Am Jur 2d, Trial §§ 17–24.

[2] 75 Am Jur 2d, Trial §§ 20, 21, 24.

Antagonistic defenses as ground for separate trials of codefendants in criminal cases. 82 ALR3d 245.

[4] 5 Am Jur 2d, Appeal and Error §§ 727, 805.

discretion of the trial court; to find an abuse of discretion
where a trial court has denied a motion for severance, it must
be shown that the joint trial worked to prejudice the rights of
at least one of the defendants.

2. Criminal Law—Trial—Joinder—Severance.
   A defendant is entitled to a separate trial from a codefendant
   who, it appears, may testify to exculpate himself and incrimi-
   nate the defendant who seeks a separate trial.

Dissent by D. E. Holbrook, P. J.

3. Criminal Law—Trial—Joinder—Severance—Motions—Discre-
   tion of Trial Court—Supporting Affidavits—Inconsisten-
   cies Between Defenses.
   *A decision whether to hold joint or separate criminal trials is
   discretionary with the trial court; a supporting affidavit defin-
   ing the inconsistencies between the defenses of the parties is
   required before an abuse of discretion will be found.*

4. Appeal and Error—Ruling—Correct Result.
   *A trial judge's ruling calling for a correct result will not be
   reversed even though premised upon a wrong reason.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Michael R. Mueller,* Acting
Director, Prosecutor's Repeat Offenders Bureau,
and *Raymond P. Walsh,* Assistant Prosecuting
Attorney, for the people.

*Solomon & Stern,* for defendant on appeal.

Before: D. E. Holbrook, P. J., and N. J. Kauf-
man and J. E. McDonald,* JJ.

Per Curiam. Defendant Robert Lee Webb and a
codefendant, one Henderson, were charged with
two counts each of first-degree murder, MCLA
750.316; MSA 28.548. The date of the offense was
March 10, 1975, in the City of Detroit.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

On September 24, 1975, defendant filed a motion to sever the trials of himself and Henderson, claiming that the positions were antagonistic. The motion was heard and denied on October 7, 1975. Trial commenced on November 24, 1975, in Recorder's Court and continued until December 5, 1975.

On December 12, 1975, the jury returned a verdict of guilty on both counts of the charged offense in regard to defendant. The jury was unable to reach any verdict as to Henderson. On December 23, 1975, defendant was sentenced to two concurrent terms of life imprisonment. Appellate counsel having been appointed, defendant appeals as of right.

At the beginning of the trial, both defendants renewed their respective motions to sever and these motions to sever were again denied.

The decision to try codefendants jointly or separately is in the discretion of the trial court. MCLA 768.5; MSA 28,1028. To find an abuse of discretion where a trial court has denied a motion for severance, it must be shown that the joint trial worked to prejudice the rights of at least one of the defendants.

In the present case, defendant claims that the court abused its discretion in denying a motion to sever because the defense theories of the codefendants were antagonistic. In particular, defendant claims that his codefendant's theory of the case was that defendant alone committed the offense, making the codefendant a victim of circumstances. Defendant contends that he should not have been required to defend against the accusations of his codefendant.

The case law supports defendant's position. In *People v Hurst,* 396 Mich 1; 238 NW2d 6 (1976),

the Michigan Supreme Court dealt squarely with the question of a joint trial where the codefendants accuse each other of the crime. The *Hurst* Court stated:

"The general rule is that a defendant does not have a right to a separate trial. Joinder of defendants for a trial is usually within the discretion of the court. However, '[a] severance should be granted when the defense of several defendants jointly indicted are antagonistic to each other'. 5 Wharton's Criminal Law and Procedure, § 1946; Anno: *Right to severance where two or more persons are jointly accused,* 70 ALR 1171.

"The commentary accompanying the American Bar Association Standards Relating to Joinder and Severance states: 'it has long been the view that defendants joined for trial should be granted a severance whenever their defenses are antagonistic to each other.

" 'A separate trial will be ordered where the defenses of the accused are antagonistic * * * .' *State v Klein,* 97 Conn 321; 116 A 596, 597 (1922).

" 'Where defenses are antagonistic and one defendant accuses the other, thus making it impossible for the defendants asking for a severance to have a fair trial, the severance should be granted.' *People v Meisenhelter,* 381, Ill 378; 45 NE2d 678, 684 (1942)." (Footnote omitted.) 396 Mich at 6.

Quoting from *People v Braune,* 363 Ill 551, 557; 2 NE2d 839, 842 (1936), the *Hurst* Court set forth the prejudicial impact of a joint trial involving antagonistic defendants:

" 'The trial was in many respects more of a contest between the defendants than between the People and the defendants. It produced a spectacle where the People frequently stood by and witnessed a combat in which the defendants attempted to destroy each other. Any set of circumstances which is sufficient to deprive a defendant of a fair trial if tried jointly with another is sufficient to require a separate trial.' " 396 Mich at 7.

In *State v Thibodeaux,* 315 S2d 769 (La, 1975),
also cited with approval in *Hurst, supra,* the Loui-
siana Supreme Court reversed the denial of a
pretrial motion for severance where it appears
from the arguments of counsel that the defense
theories would conflict:

"The only evidence adduced at the hearing held on
the motion was the testimony of counsel for Thibodeaux
who testified that the gravamen of his intended defense
of Thibodeaux would be to establish that the contra-
band forming the basis of the prosecution, which was
found in an apartment shared by the defendants, was
the sole property of Sallettes and that Thibodeaux had
no knowledge of its existence.

\* \* \*

"Thus, the thrust of Thibodeaux's defense is directly
accusatory of Sallettes, requiring him, in effect, to stand
trial before two accusers, the state and Thibodeaux.
Under these circumstances, justice requires that the
joint charge be severed to allow the separate trial of
each defendant." 315 S2d at 770–771.

The record in the present case reveals that the
trial court was aware of the claimed antagonism of
the defense theories in sufficient time to have
granted defendant's motion for severance. The
motion to sever was first made prior to trial and
this motion was heard and denied on October 7,
1975.

The motion was raised again by defendant at
the start of the joint trial.

When the motion was renewed at the start of
the trial, in response to the court's inquiry as to
whether the reasons were any different from those
contained in the motion prior to trial, the follow-
ing occurred:

"MR. ARDUIN *[defense attorney]*: No, your Honor, but I do want to tell the Court that these defenses, your Honor, are inconsistent and they are antagonistic, and I believe, your Honor, because of the inconsistencies of the defense, that my client will not be receiving a fair trial if your Honor has us go ahead and try this case together.

"That's my motion, your Honor.

"THE COURT: That's a luxury that's pretty hard to afford in this court, as busy as we are."

The codefendant also requested the severance of these trials and the court's response was that it thought it would be a fair trial if both parties were tried jointly.

A reading of this discussion indicates that the trial court was put on notice of a potential conflict between the defendants and this conflict became clearly apparent as the defendants began to present their cases and continued throughout the argument and testimony. The trial thus became the type of prejudicial confrontation between codefendant contemplated by the Court in *Hurst* and *Thibodeaux*. The trial court, having been advised of this upcoming conflict, erred in failing to grant defendant's motion to sever the trial.

Defendant also alleges misconduct on the part of the jurors and error on the part of the court for allowing testimony of a key witness to be recreated after the transcript of that testimony could not be prepared. Defendant also claims that he was denied his right to appeal for a portion of the transcript could not be produced and the court held a hearing to reconstruct the testimony and settle the record. Since none of these last enumerated items are apt to reoccur at the subsequent trial of this defendant, it is not necessary to write

further concerning any of the other claimed reasons for appeal.

The denial of the motion to sever was prejudicial error. The conviction of the defendant is reversed and the matter is remanded for trial.

D. E. Holbrook, P. J. *(dissenting)*. This writer is constrained to respectfully disagree with the result required by the majority in their opinion. It appears to this writer that defendant-appellant received a fair trial and that no prejudice resulted to him in being tried with codefendant Henderson. Defendant-appellant Webb had been a guest of Henderson in his apartment for several weeks before the two murders, which are the subject of this criminal proceeding, occurred. Both men had girl friends living with them in the apartment. Webb's girl friend left the apartment on March 8, 1975, two days before the murders. There was testimony (not Henderson's) in the case to indicate that Webb thought Big Jim was hiding her. Big Jim was one of the victims of the murder. Big Jim and the other victim were in Big Jim's apartment on the first floor where the murders occurred and Henderson's apartment was on the third floor of the same apartment building.

On the morning of the offense, March 10, 1975, Webb and Henderson went downtown to get Webb's two welfare checks. After obtaining the checks, Webb cashed one check and purchased a shotgun for $48 at a pawnshop. Then both men had a drink at a bar and visited a friend of Webb. It is unclear where they obtained the shells for the shotgun, but evidently they had them for when they arrived at the apartment Webb had the shotgun and Henderson had a sack of shells. Previous to returning to the apartment Webb purchased a

bottle of gin or vodka, took it with him to Henderson's apartment and drank it with Patricia Young, a friend who came over from another apartment in the same building. Neither Henderson nor his girl friend drank any of it. There was no dispute of the fact that the gun was at the apartment and that Webb had it. Webb testified that he bought the gun for his father. He further testified that about 1:30 in the afternoon of the day in question, he left the apartment and went to his mother's home quite a distance away—that at the time he arrived at his mother's, the police were there and so he stopped at a friend's home nearby and stayed there until the police left. That night he tried to return to Henderson's apartment to get the check that he had not cashed and had left there. A friend of his drove him over to the apartment and when they arrived someone shot at the passenger side where Webb was sitting, they then left and did not return. Webb's defense was simple—he was not there, he did not do it, he did not know anything at all about the shootings. The shootings took place about 2:30 p.m., about an hour after Webb said he left the apartment. Webb further testified he sold the shotgun for $50 to a man whose name he doesn't know. He did not describe him and did not know where he lived or anything else about him. He met him in a bar.

Henderson testified and verified Webb's account with a few variations concerning the activities of the two of them that day up until 1:30 p.m. Henderson, however, corroborated other witnesses' testimony to the effect that Webb was there before and just after the shootings. Henderson did not place Webb in the apartment where the shootings occurred, nor did he witness the shootings. One of the witnesses testified she heard Webb say he was going to shoot Big Jim (one of the victims). There

was considerable evidence that tended to show
that Webb was present in the apartment building
at the time of the shootings. Webb's counsel cross-
examined Henderson as well as all the res gestae
witnesses. The jury was able to treat fairly defend-
ant Webb concerning all the facts of the case
brought out in the testimony and properly pre-
sented before the jury. All of defendant Webb's
claims and theories were fully explored and ex-
plained by his attorney.

It is true that the trial judge only had the
motion phrased in conclusory language and did
not have all these facts before him when he denied
the motion of defendant Webb to sever his trial.

The motion of defendant Webb is as follows:

"Now comes the above named defendant by M. Ar-
thur Arduin his Attorney and moves this Honorable
Court to sever this defendant's case for the following
reasons:

"1. That the defendant is charged with the offense of
2 - first degree murders.

"2. That the other defendant in this case is one
Johnny Lee Henderson.

"3. That the interests of this defendant are directly
opposite to those of his co-defendant, and that although
his co-defendant is charged with the killing of the two
persons named in the information, this co-defendant,
Johnny Lee Henderson is trying to put the blame on
this defendant although defendant says he is innocent
of this charge.

"4. That such a conflict of interests rrequirs [sic] that
this defendant be tried separately, so that he can obtain
a fair trial.

"5. That is [sic] he is forced to go to trial with this co-
defendant, the jury might come to a conclusion that
this co-defendant is guilty, then this defentant [sic]
could also be inferred to be guilty, *which guilt could be
inferred by defendant's mere presencee [sic].*" (Empha-
sis supplied.)

This motion was conclusory in nature and not in accord with the facts as presented to the jury. Defendant Webb should have spelled out in an affidavit the conflict, if any, between him and defendant Henderson. This he did not do.

Also, in connection with the motion to sever the trial of defendant Webb, we note with interest that his attorney filed a motion to endorse additional res gestae witnesses—those who were not listed on the information but who Webb claimed were res gestae witnesses. Webb desired these witnesses to appear and testify and the motion to endorse the res gestae witnesses was granted by the trial court and the witnesses were subpoenaed to testify.

The opinion of the majority bases their reversal and grant of a new trial on the fact that the trial court improperly denied the motion to sever. *People v Hurst*, 396 Mich 1; 238 NW2d 6 (1976).

The basis for this writer's dissent is based on the ruling of a similar case in our Court. In *People v Smith*, 73 Mich App 463, 468–469; 252 NW2d 488 (1977), the Court in part stated:

"The decision whether to hold joint or separate trials is discretionary with the trial court. MCLA 768.5; MSA 28.1028. *People v Hurst*, 396 Mich 1, 11; 238 NW2d 6 (1976). In moving the court for separate trial, defendant must 'show that his substantial rights will be prejudiced by a joint trial'. *People v Scott*, 61 Mich App 91, 94; 232 NW2d 315 (1975). See *People v Schram*, 378 Mich 145, 156; 142 NW2d 662 (1966). *A supporting affidavit defining the inconsistencies between the defenses of the parties is required before an abuse of discretion will be found. People v Mullane*, 256 Mich 54, 56; 239 NW 282 (1931).

"No affidavits were attached to defendants' motions. Nor did the statements contained in defendants' motions adequately assert 'the full scope of the antagonism

between his and his co-defendant's defenses'. *People v Markham*, 19 Mich App 616, 635; 173 NW2d 307 (1969). The only substantial claim made by defendants Gilmore and Smith is that they could not call their co-defendants to testify in a joint trial; and this claim is largely vitiated by decisions indicating that co-defendants, even if tried separately, cannot be compelled to testify against their will. *People v Merritt,* 396 Mich 67, 84, n 18; 238 NW2d 31 (1976); *People v Van Alstine,* 57 Mich 69, 82; 23 NW 594 (1885). In the same vein, authority exists to answer defendant Holloway's allegation that he was denied his right of confrontation in a joint trial where he was not allowed to cross-examine his co-defendants. *State v Moore,* 101 NW2d 579, 587 (ND, 1960). We find no abuse in the trial court's denial of the respective motions." (Footnote omitted.) (Emphasis supplied.)

As in *People v Smith, supra,* no affidavits were attached to the motion of defendant Webb for severance. Defendant's motion to sever is a conclusory statement without facts, and claimed that codefendant Henderson might blame appellant for the murders. Codefendant Henderson did testify as to details of both his and appellant's activities before and after the murders. Henderson did not see appellant murder anyone, did not see Webb in Big Jim's apartment that day, also appellant had thorough cross-examination of his codefendant Henderson. Defendant-appellant was not required to present a defense before an antagonistic stranger, rather defendant had cross-examination of a codefendant well known to him. In fact, defendant and codefendant occupied the same apartment. Defendant Webb cross-examined Henderson right along with all other res gestae witnesses, and they all provided some circumstantial evidence of both appellant's and his codefendant's guilt.

Defendant-appellant did not properly claim any

substantial right as grounds for the motion for severance, nor has appellant shown prejudice to any substantial right.

It appears to this writer that defendant-appellant was desirous of having all the res gestae presented before the jury. He made a motion to this effect, which was granted. It may be that he thought he would have a better chance at acquittal if all the res gestae were presented. In this regard this writer would agree. At least all the facts would be presented to the jury.

Now it is true that the trial judge stated in refusing the motion to sever as follows:

"That's a luxury that's pretty hard to afford in this court, as busy as we are."

This writer admits that that reason was not good. However, the trial judge also stated in refusing the motion to sever as follows:

"I think it would be to his advantage to have it tried, if that's the case, in front of a Jury that can hear everything at once. If there are two separate Juries who can't see one man and can only see the one man that's in front of them and not the other, then they've got a chance to observe both.

\* \* \*

"I think it would be a fairer trial this way than it would be.

"For the reason you gave, I'll deny your motion."

A trial judge's ruling calling for a correct result will not be reversed even though premised upon a wrong reason. *Williams v The Detroit Edison Co,* 63 Mich App 559; 234 NW2d 702 (1975), *Przbylinski v Standard Pressed Steel Co,* 62 Mich App 461; 233 NW2d 614 (1975).

In accord with *People v Smith, supra,* and for the reasons herein stated whereby it is shown that defendant Webb had a fair trial with all the res gestae witnesses presented to the jury and no prejudice resulting to him, this writer would rule that the trial judge's denial of the motion to sever was proper.

The defendant has raised other issues and claims of error in this appeal which do not merit discussion or decision.

This writer votes to affirm the conviction.