PEOPLE v SCOTT

1. CRIMINAL LAW—JOINT TRIAL—SEPARATE TRIAL—MOTIONS—SEVER-
   ANCE—PREJUDICE.

   A defendant in a criminal case must show that his substantial
   rights will be prejudiced by a joint trial in order to support a
   motion for a separate trial.

2. CRIMINAL LAW—EVIDENCE—RES GESTAE—ACTS OF DEFENDANT—
   OTHER CRIMES.

   Acts, conduct and demeanor of a person charged with a crime at
   the time or shortly before or after an offense is claimed to have
   been committed, may be shown as a part of the res gestae;
   proof of such acts is not rendered inadmissible because the acts
   may tend to show the commission of another crime.

3. CRIMINAL LAW—EVIDENCE—PRISON ESCAPE—CONSPIRACY—AS-
   SAULT—ADMISSIBILITY AT SEPARATE TRIAL—MOTIVE—INTENT—
   RES GESTAE—STATUTES.

   Evidence of two defendants' attempted escape and conspiracy to
   escape from prison is admissible in a separate trial of one of
   the defendants for felonious assault of a prison guard, where
   the evidence tends to show motive and intent, defendant's
   motive and intent are material, and where the evidence shows
   part of the res gestae (MCLA 768.27).

4. CRIMINAL LAW—SEPARATE TRIALS—EVIDENCE—PREJUDICE—JOINT
   TRIAL.

   Denial of a defendant's motion for a trial separate from his
   codefendant, on the grounds that the admission of evidence of
   the two defendants' attempted escape and conspiracy to escape
   from prison would prejudice the defendant, was not an abuse of

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 21 Am Jur 2d, Criminal Law § 127.
[2] 29 Am Jur 2d, Evidence §§ 708, 713.
[3] 27 Am Jur 2d, Escape, Prison Breaking, and Rescue §§ 4, 17.
[5] 17 Am Jur 2d, Continuances § 4.
[6] 21 Am Jur 2d, Criminal Law §§ 185, 494.
[6, 8] 21 Am Jur 2d, Criminal Law § 312 *et seq.*
[9, 10] 58 Am Jur, Witnesses § 775 *et seq.*

discretion where the evidence would be admissible against the defendant at either a separate trial or a joint trial (MCLA 768.5).

5. CONTINUANCE—ALLEGATIONS—WITNESSES—INVESTIGATION—RE-QUEST FOR CONTINUANCE—TIME FOR INVESTIGATION.

A defendant was not entitled to a continuance to allow him to investigate allegations made by a prosecution witness where no continuance was requested and it appears that defense counsel concluded nothing would be gained by investigating the allegations; refusal to grant the continuance, even if a continuance was requested, would not be reversible error where there was sufficient time for counsel to investigate the allegations and present testimony in rebuttal, and where the failure to grant the continuance would not have been so palpably and grossly violative of fact and logic that it evidences not the exercise of judgment but defiance thereof.

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—LESSER INCLUDED OF-FENSES—OBJECTION.

Failure to instruct the jury on lesser included offenses was not error where the trial judge did not affirmatively exclude lesser included offenses from the jury's consideration, defendant made no request for instructions as to lesser included offenses, and defendant did not object to the instructions as given when afforded the opportunity to do so.

7. CRIMINAL LAW—RIGHT TO COUNSEL—EFFECTIVE ASSISTANCE OF COUNSEL—FAILURE TO INVESTIGATE—TRIAL TACTICS—SHAM—OTHER EVIDENCE.

Effective assistance of counsel was not denied where a counsel's failure to investigate allegations of a prosecution witness constituted a proper trial tactic, did not when viewed as a whole make the representation of defendant a sham, was not of such serious proportion that it may have been decisive, and the defendant would have been convicted anyway because of other evidence against him.

8. APPEAL AND ERROR—RIGHT TO COUNSEL—EFFECTIVE ASSISTANCE OF COUNSEL—EVIDENTIARY BASIS—RECORD.

A defendant's claim that his counsel did not adequately prepare for trial is prematurely raised where there is no evidentiary basis in the record upon which to decide the claim.

9. WITNESSES—IMPEACHMENT—PRIOR STATEMENTS—MEMORY OF WIT-NESS—DIRECTION OF IMPEACHMENT.

A witness who testified that he does not remember any events

preceding an accident and does not remember making any statements to a police officer may not be impeached by use of prior statements to the police officer where the impeachment is not directed toward facts the witness testified to but rather toward facts to which the witness did not testify.

10. Witnesses—Criminal Law—Impeachment—Prior Statements— Memory of Witness—Circumstances of Crime—Conversation with Police.

A prosecution witness in an assault trial, who did not recall making statements to a police officer, may be impeached by use of the prior statements where the witness never claimed that he did not remember what had happened on the night of the alleged assault, gave testimony about the circumstances surrounding the alleged assault, and said he remembered the conversation with a police officer but did not remember telling the officer anything different from what he had testified to at trial; the prior statements served to impeach the witness's account of the assault and of his conversation with the police officer.

Appeal from Wayne, James L. Ryan, J. Submitted Division 1 January 16, 1975, at Detroit. (Docket No. 18057.) Decided May 27, 1975.

Nathaniel Scott was convicted of felonious assault. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Steven L. Schwartz,* Assistant State Appellate Defender, for defendant.

Before: R. B. Burns, P. J., and Bronson and M. F. Cavanagh, JJ.

Bronson, J. Defendant-appellant, Nathaniel

Scott, was convicted by jury verdict on May 31, 1973 of felonious assault, MCLA 750.82; MSA 28.277, and was sentenced on June 7, 1973 to a term of from 2-1/2 to 4 years in prison. The scene of the alleged offense was the Detroit House of Correction (DeHoCo). Scott was found to have assaulted a DeHoCo guard with a makeshift weapon in an attempt to escape from confinement. Several errors, each said to mandate reversal of Scott's conviction, are claimed to have occurred during trial.

The discretion vested in trial judges by MCLA 768.5; MSA 28.1028, to try jointly indicted defendants together is said to have been abused in this case. Scott and Marvin Ritchie were jointly indicted and jointly tried. The prosecution's theory of the case was that the two defendants and another inmate planned an escape and assaulted a DeHoCo guard in carrying out that plan. Though the defendants were not charged with either escape from prison or conspiracy to escape, the prosecution sought to introduce evidence of the plan to escape and requested that the two defendants be tried jointly in order that a motive for the assault could most forcefully be demonstrated.

Scott moved for a separate trial, arguing that he was only being charged with felonious assault and would be prejudiced by the introduction of evidence relating to offenses not charged, namely, the planned escape and his alleged complicity with Ritchie. The motion was denied.

To support a motion for severance, a defendant must show that his substantial rights will be prejudiced by a joint trial. *People v Schram,* 378 Mich 145, 156; 142 NW2d 662 (1966). This Scott failed to do. The prejudice he claimed would result from a joint trial would have occurred in any

event, since the same evidence would have been admissible at a separate trial. Evidence that the defendants committed the assault in order to carry out a planned escape would be probative of their motive for, or intent in, assaulting the guard. By statute, such evidence is admissible, since it "tend[s] to show * * * motive [and] intent" and since "defendant[s'] motive [and] intent * * * [are] material" to the case. MCLA 768.27; MSA 28.1050. Moreover, the evidence would have been admissible under the following common law exception to the general rule barring proof of "other crimes":

"It is elementary that the acts, conduct and demeanor of a person charged with a crime at the time of, or shortly before or after the offense is claimed to have been committed, may be shown as a part of the *res gestae.* Proof of such acts is not rendered inadmissible by the fact that they may tend to show the commission of another crime." *People v Savage,* 225 Mich 84, 86; 195 NW 669 (1923).

Since the evidence claimed to be prejudicially admitted at the joint trial would have been admissible at a separate trial as well, the trial judge did not abuse his discretion in denying the motion for severance.

Scott's next assertion of error concerns what he refers to as the trial judge's refusal to grant a continuance to allow Scott to investigate allegations made by a prosecution witness that Scott had threatened him in an attempt to keep him from testifying truthfully.

Freddie Banford, Jr., an inmate at DeHoCo at the time the felonious assault allegedly occurred, was called as a witness by the prosecutor. At first Banford testified that he could not recall anything unusual happening on the night in question, say-

ing in addition that he probably testified differently on an earlier occasion. He claimed that he couldn't remember what that earlier testimony had been. Later, Banford recanted, out of the presence of the jury. He stated that he had lied in response to the questions put to him earlier because he had been threatened by the two defendants while waiting in the "bullpen" in the courthouse prior to trial. He then related what he had seen on the night in question, again out of the presence of the jury.

Scott's trial attorney objected strenuously to the admission before the jury of Banford's second version and attendant statement about the threats. In addition, Scott himself was permitted to furnish his account of what had transpired between the defendants and Banford and to suggest that a certain deputy could provide adequate verification of Scott's story. However, we have not been able to discover any request for a continuance to investigate Banford's allegations anywhere in the record. We are not at liberty to construe counsel's protestations or Scott's explanation as a request for a continuance. Counsel, after thoroughly cross-examining Banford, apparently concluded that nothing would be gained by questioning the deputy. We cannot disregard that exercise of tactical judgment. The trial judge did not err in failing to grant a continuance where none was requested. *People v McLendon,* 51 Mich App 543, 546; 215 NW2d 742 (1974).

Even if Scott's identification of the deputy as a source of information is considered a request for a continuance, the trial judge did not abuse his discretion in failing to grant it. The trial of this matter did not conclude until the day following Banford's disclosure of the alleged threats. There

was sufficient time for counsel to investigate the alleged threats and to present testimony in rebuttal. There is no showing that the deputy was unavailable to testify or even that Scott attempted to secure his presence. The trial court's failure to grant a continuance under such circumstances is not "so palpably and grossly violative of fact and logic that it evidences * * * not the exercise of judgment but defiance thereof", *People v Charles O Williams,* 386 Mich 565, 572; 194 NW2d 337 (1972), and accordingly does not constitute reversible error.

The trial judge's failure to instruct the jury on lesser included offenses is next alleged as error. The jury was told that:

"There are only two possible verdicts in this case as to each defendant. The verdicts are: guilty of the offense of assault with a dangerous weapon or not guilty".

Scott made no request for instructions as to lesser included offenses. Nor did he object to the instructions as given when afforded the opportunity to do so. The trial judge did not affirmatively exclude lesser included offenses from the jury's consideration so as to bring into play *People v Lemmons,* 384 Mich 1; 178 NW2d 496 (1970). "Under these circumstances, we do not reverse." *People v Jones,* 44 Mich App 633, 635; 205 NW2d 611 (1973), and cases cited therein.

Scott also maintains that he was denied the effective assistance of counsel, because of his attorney's failure to investigate Banford's allegations and failure to adequately prepare for trial.

We are of the opinion that counsel's failure to investigate the allegations that Banford was threatened constituted a proper trial tactic and did

not "viewed as a whole, [make] the representation provided for the defendant or his trial * * * a sham". *People v Degraffenreid,* 19 Mich App 702, 712; 173 NW2d 317 (1969). Nor do we feel that counsel's failure to more thoroughly explore the threat allegations was "of such serious proportion that it may have been decisive", *People v Degraffenreid, supra,* at 716, because we are convinced that Scott would anyway "assuredly [have] be[en] convicted because of the other evidence against him". *People v Degraffenreid, supra,* at 719.

The claim that counsel did not adequately prepare for trial is not addressed in the record and is prematurely raised. Before we can consider that ground for reversal, we must be furnished with an evidentiary basis upon which to decide it. See *People v Ginther,* 390 Mich 436, 443; 212 NW2d 922 (1973), *People v Taylor,* 387 Mich 209, 218; 195 NW2d 856 (1972).

Scott's final assertion of error concerns the impeachment of a prosecution witness, Charles Johnson. When Johnson could not recall making certain prior statements to a police officer, the police officer to whom the prior statements were allegedly made was allowed to relate those prior statements to the jury. Scott does not contend that the procedure for impeachment as set forth in *People v Rodgers,* 388 Mich 513; 201 NW2d 621 (1972), was violated. Rather, he maintains that a witness cannot properly be impeached by introducing his prior statements if that witness cannot recall having given such statements. A proper resolution of this question requires a brief survey of the Michigan case law on impeachment by prior inconsistent statements.

In *People v Durkee,* 369 Mich 618; 120 NW2d

729 (1963), an eyewitness was called to testify by the people in a felonious driving prosecution. She said she could not remember being in an accident and did not remember making any statements to anyone at the hospital following the accident. The Supreme Court held that under such circumstances it was error to allow impeachment by introduction of the prior statements she could not recall having made because "it was not directed toward facts the witness testified to but rather toward facts to which the witness did not testify". *People v Durkee, supra,* at 626.

The import of *Durkee* was further explained in a later case, *Hill v Harbor Steel & Supply Corp,* 374 Mich 194, 215; 132 NW2d 54 (1965), as follows:

"Plaintiffs' final contention is that the trial court erred by admitting into evidence testimony of an investigating police officer regarding statements made to him after the accident by plaintiffs' witness Griggs. Griggs was in the hospital at the time of the interview and testified that he did not remember the interview. Citing *People v. Durkee,* 369 Mich 618 [120 NW2d 729 (1963)], plaintiffs argue that Griggs could not be impeached by the police officer's testimony about such former statements.

"In *Durkee,* witness Kaufman testified that she neither remembered the accident nor her questioning by a police officer concerning it. We held that in such circumstances it was error to read into the record transcribed questions asked and answers given at the interview. Here, however, Griggs was asked at trial if he had seen Hill produce a book of matches or had seen anyone 'strike a light' and he answered, 'no'. He was then asked if he recalled having made a statement to a police officer that Hill had struck a match to thaw out the lock on the cabinet. Notwithstanding his denial of recollection of the statement made to the police officer, in the light of his prior testimony relating to events immediately preceding the explosion, it was proper to

permit the officer to testify regarding his conversation with Griggs, since it served to impeach Griggs' testimony that he had not seen Hill light a match. In *Durkee, supra,* the witness had testified she did not remember any of the events preceding the accident, and this Court's disapproval of the use of her subsequent statement to a police officer regarding such events was based upon the principle that where a witness testifies he does not remember certain events he cannot be impeached by introduction of subsequent statements regarding the events he claims not to remember."

In the instant case, witness Johnson never claimed that he did not remember what had happened on the night of the alleged assault. Indeed, he told the jury what he had witnessed as he then recalled it, saying: "I seen a crowd of guys, 60 guys in a ward and there was a crowd, and the officer was laying on the floor and the rest from there was talk." Johnson further testified that he did not see either defendant approach the guard-victim before the guard "ended up on the floor" and did not see either defendant with a piece of pipe. He said he remembered having had a conversation with a police officer a couple of days later, but did not remember telling that officer anything different from what he had just testified to at trial.

The prosecutor then asked Johnson a series of specific questions, designed to test his recollection of this conversation with the police officer. Johnson denied having made certain statements and said he couldn't recall having made certain other statements. The police officer was then called as a witness and related what Johnson had told him. The court gave a limiting instruction, telling the jury that the officer's testimony as to what Johnson told him could only be considered for purposes of assessing Johnson's credibility.

The impeachment allowed here was proper. It

served to put into question the account of the assault which Johnson gave at the time of trial. It also served to impeach Johnson's recollection of the nature of the conversation he admitted he had had with the police officer. Johnson did not claim to be unable to remember the events to which the prior statements related, and therefore the principle adopted in *Durkee, supra,* was not violated. *Smith v People,* 2 Mich 415, 417–418 (1852), *Hill v Harbor Steel & Supply Corp, surpa, People v Coates,* 40 Mich App 212, 214; 198 NW2d 837 (1972), *People v Herbert Brown,* 45 Mich App 505, 506–509; 206 NW2d 730 (1973).

Affirmed.