PEOPLE v STOKER

Docket No. 46663. Submitted October 8, 1980, at Detroit.—Decided
February 18, 1981.

Rickey E. Stoker was convicted of armed robbery and possession
of a firearm in the commission of a felony, Recorder's Court of
Detroit, John Patrick O'Brien, J. The felony-firearm charge was
subsequently dismissed. The defendant appeals, alleging that
evidence that at the time of his arrest he was in possession of
various credit cards and drivers licenses belonging to several
different people was erroneously admitted at trial. *Held:*

1. The inference raised by the prosecution by eliciting testi-
mony regarding the items of identification was that the items
were stolen. However, there was no evidence that they were
stolen. The relevance and probative value of the testimony was
questionable, while the prejudicial effect of the testimony was
clear. Thus, the testimony was not admissible as res gestae
evidence.

2. The testimony was not admissible under the similar acts
statute because there was no evidence that the items were
stolen and the purpose for which the testimony was offered
was on an issue which was collateral to the question of the
defendant's guilt or innocence of the crime charged.

Reversed and remanded.

1. Criminal Law — Evidence — Prior Acts — Res Gestae Evi-
dence. ·

Generally, evidence tending to show that a criminal defendant
has committed offenses other than those for which he is on
trial is inadmissible; an exception to the general rule is that
evidence of the acts, conduct and demeanor of the defendant at
the time of or shortly before or after the commission of the
charged offense may be admitted as part of the res gestae,

References for Points in Headnotes

[1, 3, 4] 29 Am Jur 2d, Evidence § 320 *et seq.*
Admissibility, at trial of criminal case, of evidence of defendant's
criminal acts other than those charged-Supreme Court cases. 93 L
Ed 185.
[2] 29 Am Jur 2d, Evidence § 708 *et seq.*

notwithstanding the fact that such evidence may tend to show the commission of other crimes.

2. CRIMINAL LAW — EVIDENCE — PRIOR ACTS — RES GESTAE EVI-
DENCE.

Prior to the admission of evidence under the res gestae exception to the rule precluding evidence of a defendant having committed crimes other than those with which he is charged, the trial court should find that such res gestae evidence is relevant and that its probative value outweighs any prejudicial effect.

3. CRIMINAL LAW — EVIDENCE — PRIOR ACTS — SIMILAR ACTS STAT-
UTE — RULES OF EVIDENCE — STATUTES.

A three-pronged test must be met before evidence of prior bad acts of a criminal defendant may be admitted under the "similar acts" statute: 1) there must be substantial evidence that the defendant actually perpetrated the prior bad acts; 2) there must be some special circumstances of the act which tend to prove one of the specified purposes of the "similar acts" statute; and 3) the defendant's motive, intent, absence of mistake or accident, scheme, plan or system must be material to the determination of the defendant's guilt of the charged offense (MCL 768.27; MSA 28.1050, MRE 404[b]).

4. CRIMINAL LAW — EVIDENCE — PRIOR ACTS — SIMILAR ACTS STAT-
UTE — STATUTES.

Evidence of a defendant's prior similar bad acts need not be proven beyond a reasonable doubt to be admitted under the "similar acts" statute; the prosecutor need only show that the defendant probably committed the other acts, or that the evidence offered "may tend to show" the defendant's intent or common scheme in committing the charged offense (MCL 768.27; MSA 28.1050).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Nels S. Olson,* Assistant Prosecuting Attorney, for the people.

*Alvin C. Sallen,* for defendant on appeal.

Before: D. C. RILEY, P.J., and N. J. KAUFMAN and MACKENZIE, JJ.

PER CURIAM. Defendant Rickey Eugene Stoker was found guilty of armed robbery, MCL 750.529; MSA 28.797, and possession of a firearm in the commission of a felony, MCL 750.227b; MSA 28.424(2), by a Detroit Recorder's Court jury on April 30, 1979. The trial court subsequently granted the defendant's motion to dismiss the felony-firearm count and defendant was sentenced to 7 to 15 years on the armed robbery conviction. Defendant appeals as of right.

The complainant, Janet Pruitt, testified that she was standing at a bus stop when the defendant pulled up in a green Thunderbird, pointed a gun at her, and ordered her to "put your purse in the car and turn around". The complainant complied with the order and the defendant then drove away. After receiving notification of the robbery, police observed the defendant driving a green Thunderbird and a pursuit followed for approximately four to six miles at speeds in excess of 80 miles per hour. When the defendant exited from the vehicle, the police officer followed on foot. The officer testified that the defendant stopped and reached into a brown pouch or purse on his left hip whereupon the officer fired three shots into the defendant. The officer testified that the pouch looked like a holster and he thought the defendant was reaching for a gun.

There was testimony that the complainant's maroon purse was found in an alley through which a witness had observed a police car driving at a high rate of speed. This purse contained no money or charge cards when the witness found it.

Defendant claims the trial court erred in allowing the admission of evidence indicating that the defendant had committed other uncharged robberies. Defendant was arrested for the robbery of the

maroon purse from the complainant. Inside the brown pouch which the defendant was wearing at the time of his arrest, police officers found several drivers' licenses and identification cards belonging to persons other than the complainant. The prosecutor elicited testimony from the complainant that the articles of identification were not in her wallet or purse at the time the purse was taken from her by the defendant. Defense counsel objected to testimony concerning the articles of identification, claiming the testimony was highly prejudicial because it implied the defendant had committed other crimes. Defense counsel moved for a mistrial, which motion was denied.

Subsequently, defense counsel indicated that he would make an issue of whether or not the defendant reached for the brown pouch attached to his belt prior to being shot by the arresting police officer. The prosecutor responded that he would attempt to introduce evidence of the identification cards found on the defendant only if the defendant challenged the testimony that the officer shot the defendant in response to the defendant's act of reaching for his pouch. If such a challenge were made, the prosecutor argued that he could refer to the identification cards in the pouch for the following reasons:

"It would be our position that this evidence is probative of that issue, that the defendant knew this identification did not belong to him. It was taken from other people through criminal methods, and that when he was being chased by the police, he tried to go into his pouch and throw this other evidence down, and thereby the police officer thought he was going for a weapon and the police officer shot him.

"And this evidence is probative of that issue."

Defense counsel stated that he would pursue the issue and the police officer, in response to defense counsel's question, testified that had the defendant not reached toward the pouch or purse on his hip, he probably would not have shot him.

The prosecutor subsequently extracted testimony from another police officer regarding the other items of identification found on defendant when a custodial search was done at the hospital to find his identity. Testimony indicated that inside the brown pouch hanging on the defendant's belt was a driver's license belonging to Elsie Elith Elluie, and another driver's license and a food stamp identification card belonging to a Gary Robert St. John.

Defense counsel interrupted this questioning to move for a mistrial "for the reason that the prosecutor just attempted to introduce into evidence items that would tend to show other crimes committed by my client that are not charged in the Information". The prosecutor responded by stating that it was of probative value because it showed that the defendant was reaching into his pouch to throw away the items of identification prior to being shot. The trial court denied defense counsel's motion, stating:

"THE COURT: Let me finish Mr. King's intention and his argument to the jury to the effect, yeah, he was reaching for his pouch, not because he had a gun; because he had evidence of other crimes and he was trying to get rid of it—

"MR. LEVIT *[Defense counsel]*: Your Honor—

"THE COURT: —is probative, and will lend credence to his—the People's contention that the defendant did reach for the pouch.

"You previously, after many questions by me, did indicate that you are going to attempt to show that at no time did this man reach for the pouch.

"MR. LEVIT: That's correct.

"THE COURT: Therefore, I'll allow the testimony, and your motion for a mistrial is denied."

The prosecution was, consequently, allowed to proceed with its examination of the officer regarding other items of identification. During the cross-examination of defendant's mother, the prosecution again went into the topic of the identification cards found in the defendant's pouch, questioning her extensively about individual items of identification. At one point, the prosecutor was questioning defendant's mother about a driver's license belonging to her next door neighbor which was found in his pouch:

"Q. Did she tell you your son stole her wallet with the driver's license in there?

"A. No, she did not.

At another point, the prosecutor asked:

"Q. Okay. Now, when you see all these different I.D.'s in your car, did you ever ask your son, 'Were you out robbing people?'

*    *    *

"Q. And now you have 17 driver's licenses in your car before, right, you found them?

"A. I only found one driver's license in my car. That was wedged between the two seats."

The issue was further raised during the cross-examination of Samual Moore, the defendant's uncle:

"Q. There is—I'm going to show you a driver's license.

"Did this man ever come up to you while you were working at Franklin Village and say, 'Somebody stole

the wallet out of may car?' I'd like you to take a look at that.

"A. I see it.

"Q. That man never came up to you and said, 'Somebody stole a wallet out of my car?' "

Finally, in his cross-examination of the defendant, the prosecutor directly confronted the defendant with questions concerning a specific prior act:

"Q. Now, what about this right here, People's Proposed Exhibit Number 9?

"Isn't it true that this was in the car?

"A. No, it isn't, not when I was in the car.

"Q. In other words, if a police officer testified that he searched that car at the 10th Precinct and he found this purse and the I.D. in the back seat, after you thoroughly cleaned it the night before, then the police officer would have had to put it there?

"A. Definitely."

At the conclusion of the trial, the prosecutor, in his closing argument, returned for the final time to the topic of the other items of identification:

"But remember, it's stolen property inside.

"And one thing, he's pretty slick, you know. You got rid of the purse, you got rid of the gun through the chase. You know, at high speed, you can throw stuff out. But he's got a problem now. He's about to get caught, possible, and, Oh, no, there's some more stolen property and where is it? It's in his purse there. What's he going for in the purse? To get rid of the stolen property. Or if he turned and looked at the officer, you'd have chased the guy 80 miles an hour, he's armed, he robbed a woman, you pull your gun out. Would you have shot him?"

Defendant, on appeal, contends that the evidence of the identification cards found in the

defendant's pouch is inadmissible in that it violates the rule set forth in *People v DerMartzex,* 390 Mich 410, 413; 213 NW2d 97 (1973):

"While evidence of a prior conviction of a defendant may be admissible to impeach his credibility, the general rule is that evidence tending to show the commission of other criminal offenses by the defendant is inadmissible on the issue of his guilt or innocence of the offense charged.

"Evidence of other crimes is barred because it has been decided that whatever probative value such evidence has is outweighed by the disadvantage of diverting the trier of fact from an objective appraisal of the defendant's guilt or innocence."

An exception to this rule, the res gestae exception, is set forth in *People v Scott,* 61 Mich App 91, 95; 232 NW2d 315 (1975):

" 'It is elementary that the acts, conduct and demeanor of a person charged with a crime at the time of, or shortly before or after the offense is claimed to have been committed, may be shown as a part of the res gestae. Proof of such acts is not rendered inadmissible by the fact that they may tend to show the commission of another crime.' *People v Savage,* 225 Mich 84, 86; 195 NW 669 (1923)."

See also *People v Bernard Smith,* 81 Mich App 561, 565-566; 266 NW2d 40 (1978), *People v Aldridge,* 47 Mich App 639; 209 NW2d 796 (1973).

The trial court, prior to admission of evidence under the res gestae exception, should find that the evidence is relevant and that the probative value outweighs any prejudicial effect. *People v Smedley,* 37 Mich App 325; 194 NW2d 383 (1971). In the instant case, the relevancy and probative value of the evidence was questionable in the

absence of any proofs that the items were stolen. The prejudicial effect was obvious. The trial court committed reversible error by allowing testimony into evidence concerning the other items of identification and by permitting the prosecutor to clearly imply that the items were of a stolen nature. See also *People v Campbell,* 61 Mich App 600; 233 NW2d 103 (1975), *People v Shannon,* 88 Mich App 138; 276 NW2d 546 (1979).

The evidence in the present case is too speculative to be admissible against the defendant under the res gestae rule. The prosecution introduced no evidence that the items were stolen but, rather, sought to create that impression through his own comments and questioning in the presence of the jury. The interjection of the testimony concerning the other items of identification denied the defendant a fair trial.

We further find that the complained-of evidence is not admissible under any of the exceptions to the general rule that evidence of a defendant's other bad acts is inadmissible. The similar acts statute, MCL 768.27; MSA 28.1050, provides that:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

See also MRE 404(b).

For prior acts to be admissible under the stat-

ute, a three-pronged test must be met: (1) there must be substantial evidence that defendant actually perpetrated the bad act, evidence of which is sought to be introduced; (2) there must be some special circumstances of the prior bad act which tend to prove one of the statutory items; and (3) the defendant's motive, intent, absence of mistake or accident, scheme, plan, or system must be material to the determination of the defendant's guilt of the charged offense. *People v Wilkins,* 82 Mich App 260, 267-268; 266 NW2d 781 (1978). See also *People v Oliphant,* 399 Mich 472, 488; 250 NW2d 443 (1976), and *People v Nieves,* 92 Mich App 613, 616; 285 NW2d 389 (1979).

Applying the foregoing principles to the instant case, we find that the admission of testimony concerning the other items of identification found in the defendant's pouch was erroneous.

First, there was not substantial evidence that the defendant actually perpetrated the bad acts sought to be introduced under the standard set forth in *Wilkins, supra.* Evidence of similar acts need not be proven beyond a reasonable doubt; the prosecutor need only show that the defendant probably committed the other acts, or that the evidence offered "may tend to show" the defendant's intent or common scheme in committing the charged offense. *People v Cook,* 95 Mich App 645; 291 NW2d 152 (1980). However, in the case at hand, there was no evidence introduced to show that the items found in the defendant's pouch were stolen. The complainant testified that the items were not hers, but the "true" owners of the pieces of identification were never called to testify to the "stolen" nature of the items. There was also no evidence presented to show that defendant was in possession of the items without the consent of

the owners. Defendant's mother testified that other persons used her Thunderbird and and frequently left their belongings inside the car. The defendant testified that he found the identification cards in the car when he was cleaning it and put them in his pouch temporarily before giving them to his mother. In light of the defendant's testimony and the absence of any evidence disputing it, the first requirement for admission of similar acts evidence has not been met.

Second, the challenged evidence was not introduced to establish an issue material to the outcome of the case. *Wilkins, supra,* 268, *People v Cramer,* 97 Mich App 148; 293 NW2d 744 (1980). The purpose for which defendant's bad acts were offered by the prosecution was to refute defense counsel's contention that the shooting of the defendant was unjustified. This issue was collateral to the central question in the case—whether or not the defendant robbed the complainant at gunpoint. There is a fatal deficiency in the absence of special circumstances common to both the other act and the charged offense from which one could logically infer motive, opportunity, intent, preparation, or any of the other statutorily enumerated purposes.

By way of contrast, the defendant contended that he did not perform the act in question at all. There was no showing that defendant had engaged in a particular scheme, plan, or system with regard to the armed robbery which would warrant introduction of evidence with regard to the possession of credit and identification cards belonging to other persons.

Under the facts and circumstances of the case, admission of testimony concerning other identification cards found on the defendant should have been excluded. The prosecution failed to come

forward with sufficient details of the alleged bad acts so as to justify admission under the similar acts statute. The impression was created by the prosecutor that the items were stolen and, therefore, the defendant must have committed the armed robbery which forms the basis for the present prosecution. This line of questioning and comment was highly prejudicial, especially where the inference the prosecutor was attempting to create was unsupported by the evidence. See *People v Torrez,* 90 Mich App 120, 125; 282 NW2d 252 (1979), *People v Swejkowski,* 90 Mich App 366; 282 NW2d 5 (1979).

The "similar acts evidence" was neither probative of one or more of the statutorily specified purposes nor were any of those purposes material to the case. Consequently, the trial court abused its discretion in allowing the complained-of charge cards and identification cards to be admitted into evidence. See *People v Major,* 407 Mich 394; 285 NW2d 660 (1979), *People v Mustafa,* 95 Mich App 583; 291 NW2d 130 (1980), *People v MacMillan,* 95 Mich App 292; 290 NW2d 125 (1980).

Since we must reverse and remand for a new trial, we find it unnecessary to decide the other issues raised by the defendant on appeal.

Reversed and remanded.