PEOPLE v KEY

PEOPLE v KAIGLER

Docket Nos. 57393, 57516. Submitted March 17, 1982, at Detroit.—
Decided November 4, 1982.

Earl Key and Elmer Kaigler were each convicted, in a joint trial,
of delivery of less than 50 grams of cocaine, Recorder's Court of
Detroit, Michael J. Talbot, J. Both defendants appealed, and
the Court of Appeals consolidated the appeals. Several issues
are raised on appeal. *Held:*

1. The classification of cocaine along with various narcotic
drugs for purposes of providing punishment for its possession,
delivery, or manufacture does not render that punishment
cruel and unusual in violation of the constitutional guarantee
against cruel and unusual punishment.

2. The classification of cocaine along with narcotic drugs is
not an irrational classification resulting in a denial of equal
protection.

3. The controlled substances provisions of the Public Health

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law §§ 539, 627.
  25 Am Jur 2d, Drugs, Narcotics, and Poisons § 48.
  Review of excessiveness of sentence in narcotics case. 55 ALR3d
  812.
[2] 21 Am Jur 2d, Criminal Law § 626.
  Validity of state statute imposing mandatory sentence or prohibit-
  ing granting of probation or suspension of sentence for narcotics
  offenses. 81 ALR3d 1192.
  Length of sentence as violation of constitution provisions prohibit-
  ing cruel and unusual punishment. 33 ALR3d 335.
[3] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 2.
[4] 21A Am Jur 2d, Criminal Law § 680.
[5] 29 Am Jur 2d, Evidence § 320.
  Admissibility, under Rule 404(b) of Federal Rules of Evidence, of
  evdience of other crimes, wrongs, or acts not similar to offense
  charged. 41 ALR Fed 497.
[6] 29 Am Jur 2d, Evidence §§ 708, 713.
[7] 29 Am Jur 2d, Evidence § 333.
[8] 29 Am Jur 2d, Evidence § 148 *et seq.*

Code do not violate the title-object clause of the Michigan Constitution.

4. The trial court's failure to comply with GCR 1963, 511, in its jury selection procedure, and the defendants' timely objection to that procedure, mandates reversal of the defendants' convictions.

5. Evidence that defendant Key delivered cocaine to a third person at the same time he delivered that which he was charged with was admitted to show Key's knowledge and intent. This was error, as knowledge and intent were not contested issues in the case, both defendants having asserted that they were not involved in the drug transaction with which they were charged.

Reversed and remanded.

V. J. BRENNAN, J., concurred with the majority in its disposition of the defendants' challenges to the statute under which they were convicted and with the necessity for reversal because of the jury selection procedure used. He would hold, however, that the evidence of Key's transaction with the third party was admissible. Knowledge and intent are elements of the offense with which defendants were charged and the prosecutor is obliged to present evidence on every element of the crime charged regardless of the defendant's theory of the case.

### OPINION OF THE COURT

1. CONTROLLED SUBSTANCES — COCAINE — CRUEL AND UNUSUAL PUNISHMENT.

The fact that the statutorily prescribed penalties for the possession, delivery and manufacture of cocaine are the same as those for substances classified as narcotic drugs does not, in itself, make those penalties cruel and unusual punishment (MCL 333.7401; MSA 14.15[7401]).

2. CONSTITUTIONAL LAW — CRIMINAL LAW — CRUEL AND UNUSUAL PUNISHMENT.

The test for determining whether a punishment is cruel and unusual is whether the punishment is in excess of any that would be suitable to fit the crime.

3. CONTROLLED SUBSTANCES — COCAINE — CLASSIFICATION OF CONTROLLED SUBSTANCES.

The placing of cocaine in the same class as narcotic drugs is not an irrational classification (MCL 333.7401; MSA 14.15[7401]).

4. CRIMINAL LAW — JURY SELECTION — COURT RULES.

The use of a jury selection procedure which fails to comply with the court rule concerning the selection of jurors and which is objected to before the selection process begins requires reversal of a defendant's conviction even without a showing of prejudice (GCR 1963, 511).

5. CRIMINAL LAW — EVIDENCE — OTHER CRIMINAL OFFENSES.

Generally, evidence tending to show the commission of other criminal offenses by a defendant is inadmissible on the issue of his guilt or innocence of the offense charged.

6. CRIMINAL LAW — EVIDENCE — OTHER CRIMINAL OFFENSES.

Prior to the admission of evidence of a defendant's other criminal acts, under the res gestae exception to the rule that evidence of a defendant's other criminal offenses is inadmissible on the issue of his guilt or innocence of the crime charged, a trial court must determine that the probative value of the proffered evidence outweighs any prejudicial effect.

7. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS EVIDENCE — RULES OF EVIDENCE.

Evidence of a defendant's other, similar criminal acts must meet four criteria to be admissible: (1) there must be substantial evidence showing that the defendant committed the other act; (2) the evidence of the other act must tend to prove a purpose permitted under the rules of evidence; (3) the purpose must be a material issue in the case; and (4) the probative value of the evidence to be admitted must outweigh its prejudicial effect (MRE 404[b]).

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY V. J. BRENNAN, J.

8. CRIMINAL LAW — ELEMENTS OF OFFENSE CHARGED — DEFENDANT'S THEORY.

*A prosecutor has the obligation of proving each and every element of a crime charged beyond a reasonable doubt, regardless of the theory presented by the defense.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *A. George Best, II* (in *Key)* and *Frank J. Bernacki* (in *Kaigler),* Assistants Prosecuting Attorney, for the people.

*Vesta Svenson,* for defendant Key on appeal.

*McGinnis & Evelyn, P.C.* (by *Gerald K. Evelyn),*
for defendant Kaigler on appeal.

Before: J. H. GILLIS, P.J., and V. J. BRENNAN and
N. J. LAMBROS,* JJ.

PER CURIAM. Defendants were convicted by a
jury at a joint trial held on February 2, 1981, of
delivery of less than 50 grams of a substance
containing cocaine, MCL 333.7401(2)(a)(iv); MSA
14.15(7401)(2)(a)(iv). Defendant Key was sentenced
to 11 to 20 years in prison. Defendant Kaigler was
sentenced to 4 to 20 years in prison. Their appeals
have been consolidated by this Court.

Detroit Police Officer John Mangum was an
undercover officer in the narcotics section. He
testified that on July 29, 1980, he went to the
dwelling located at 2422 and 2424 Elmhurst. He
met Key on the porch and asked him for a $60
packet of cocaine. The officer gave Key $60 in
recorded currency and Key then went upstairs and
returned with Kaigler. After the three men dis-
cussed a future purchase, Kaigler gave the officer
a manila coin envelope. It was later determined
that the substance inside the envelope weighed .40
grams and contained cocaine. Defendants were
arrested on August 8, 1980, in connection with this
incident.

Defendant Kaigler, testifying on his own behalf,
stated that on July 29, 1980, he resided at 2424
Elmhurst and Key resided across the hall at 2422
Elmhurst. Kaigler testified that he could not re-
member where he was or what he was doing at the
time the crime allegedly occurred. He denied any
involvement in the alleged crime and stated that

* Circuit judge, sitting on the Court of Appeals by assignment.

the first time he ever saw Officer Mangum was on August 8, 1980, the day he was arrested.

Defendant Key also took the stand in his own behalf and denied any involvement in the charged offense. It was Key's theory of the case that the police framed him because they had been unable to arrest and charge him in connection with stolen automobile activity which they believed he was engaged in. Key and Dwayne Talley testified in support of this theory.

Defendants first claim that the statute under which they were convicted violates the constitutional bar against cruel and unusual punishment because it places cocaine in the same class as narcotic drugs.

Defendants are incorrect to the extent that they argue that cocaine is classified in the statute as a narcotic drug. Cocaine is classified in schedule 2 along with certain narcotic drugs. MCL 333.7214; MSA 14.15(7214). It is true that, under MCL 333.7401; MSA 14.15(7401), proscribed conduct involving cocaine is subject to the same penalty as proscribed conduct involving narcotic drugs classified in schedules 1 and 2. However, MCL 333.7401(2)(a); MSA 14.15(7401)(2)(a) recognizes that cocaine is something other than a narcotic drug. It states:

"(2) A person who violates this section as to:

"(a) A controlled substance classified in schedule 1 or 2 which is either a narcotic drug or described in section 7214(a)(iv) [i.e., cocaine and its derivatives and chemical equivalents] * * *."

The Legislature perceived the abuse of cocaine as a serious threat to public health and prescribed penalties for its possession, delivery, manufacture, etc., accordingly. The fact that cocaine is treated

in the statute in the same manner as substances classified as narcotic drugs, does not, in and of itself, constitute cruel and unusual punishment.

Defendants' attempted analogy to *People v Lorentzen,* 387 Mich 167; 194 NW2d 827 (1972), is without merit. That case involved the since-repealed Narcotic Drug Act, 1937 PA 343, as amended, which penalized the unlicensed sale, dispensation or otherwise giving away of any quantity of marijuana with a mandatory prison sentence of 20 years. The statute applied equally regardless of the presence or absence of prior offenses and made no provision for different penalties when different quantities of drugs were involved. The Supreme Court found that the penalty was so excessive that it shocked the conscience.

In contrast, the present statute provides different penalties for different proscribed conduct. For example, simple possession is treated in a manner different than manufacturing, delivery or possession with intent to manufacture or deliver. In addition, different penalties are prescribed where different amounts of the drug are involved. See §§ 7401 and 7403.

The dominant test governing cruel and unusual punishment is whether "the punishment is in excess of any that would be suitable to fit the crime". *Lorentzen, supra,* p 176; *People v Stewart (On Rehearing),* 400 Mich 540, 554; 256 NW2d 31 (1977). We conclude that the treatment of cocaine in the Public Health Code does not violate that standard.

Defendants next claim that inclusion of cocaine in schedule 2 along with "hard" narcotic drugs such as heroin is an irrational classification resulting in a denial of equal protection.

Defendants rely on *People v Sinclair,* 387 Mich

91; 194 NW2d 878 (1972). In that case, the defendant was convicted of unlawful possession of two marijuana cigarettes, in violation of former MCL 335.153; MSA 18.1123, and was sentenced to 9-1/2 to 10 years imprisonment. Although a majority of the justices voted to set aside the conviction, only three of the six justices sitting in the case agreed that the classification of marijuana with "hard" narcotic drugs violated equal protection.

Justice SWAINSON, writing separately, framed the issue as "whether marijuana may be constitutionally classified as a narcotic drug if, in fact, it is not a narcotic". 387 Mich 103. He analyzed the makeup and effects of marijuana in comparison with other drugs and concluded that there was no rational basis for classifying marijuana as a narcotic drug. *Sinclair, supra,* pp 114-115.

Justices WILLIAMS and SWAINSON took judicial notice of the existing scientific knowledge regarding marijuana. Justice WILLIAMS emphasized the following quote from testimony given by Stanley F. Yolles, M.D., before the congressional subcommittee on public health and welfare of the interstate and foreign commerce committee on September 17, 1969:

"There is total agreement among competent scientists and physicians that marihuana is not a narcotic drug like heroin or morphine but rather a mild hallucinogen. To equate its risks—either to the individual or to society—with the risks inherent in the use of hard narcotics is neither medically nor legally defensible.' " (Emphasis deleted.) 387 Mich 127.

At the time *Sinclair* was decided, there was a general consensus in the scientific and medical communities that the consequences of marijuana use were much less harmful than the effects of

narcotic drugs. The opinions of Justice WILLIAMS and Justice SWAINSON were based on this consensus. It is the absence of such widespread agreement concerning the effects of cocaine which distinguishes the present case from *Sinclair.* Defendants cite no authority which would lead this Court to conclude that cocaine is a harmless social intoxicant, or that the Legislature's classification of cocaine in the same schedule as narcotic drugs is irrational.

Defendants rely on the Illinois Appellate Court's decision in *People v McCarty,* 93 Ill App 3d 898; 418 NE2d 26 (1981). However, that decision was reversed by the Supreme Court of Illinois in *People v McCarty* 86 Ill 2d 247; 427 NE2d 147 (1981). In *McCarty,* cocaine was included within the statutory definition of "narcotic drugs". The Illinois Appellate Court found that cocaine had none of the characteristics of narcotic drugs and concluded that the Legislature's classification violated the equal protection clauses of the United States and Illinois Constitutions.

The Illinois Supreme Court reversed. The court began its analysis with a discussion of the nature and effects of cocaine. The court stated:

"The 'consensus of medical opinion' is that cocaine is not a narcotic. The characteristics of narcotic drugs are that they (1) botanically, are related to the opium poppy; (2) pharmacologically, are psychoactive depressants; (3) physiologically, are addicting, that is, they produce tolerance and withdrawal. Tolerance means that with continued use the body will require a larger amount of the drug to produce the same effect. When the drug is withdrawn from the user a 'withdrawal syndrome' will occur with a variety of unpleasant symptoms.

"Cocaine is not related to the opium poppy but is a substance derived from coca leaves. Unlike the narcot-

ics which are depressants, cocaine is a central nervous
system stimulant. Its short-term physiological effects
include increase in heart rate and blood pressure and
eye pupil dilation. To the user it produces a euphoric
state and reduces fatigue and hunger. It is not physi-
cally addictive in that it does not produce tolerance or
withdrawal. Both experts were of the opinion that it
does not cause hallucinations or psychosis but may
cause a perceptual disorder in which a user experiences
the sensation of insects crawling in or on the skin. Both
experts agreed that cocaine can be psychologically ad-
dictive but felt that such dependency is seen in only 1%
of users labeled 'compulsive.'

"Cocaine is taken into the body by most users nasally
by 'snorting' or 'sniffing.' A small percentage of users
(1%) inject cocaine intravenously. Both experts were of
the opinion that cocaine is not generally harmful in
that it is quickly and cleanly eliminated from the body.
Nasal ingestion may, however, cause chronic nasal
irritation, which can result in the perforation of the
nasal septum. Other common side effects are irritabil-
ity, insomnia and weight loss. Death can occur from a
large overdose but is rare in recreational use. Cocaine
has a recognized medical use as a local anesthetic.

"Although both experts were of the opinion that
cocaine has no causal connection to criminal behavior,
both conceded that criminal activity, including violent
crime, is associated with the illegal trafficking of co-
caine. Dr. Fort testified that there is some divergence of
opinion among experts, especially between human re-
searchers and animal researchers, as to the dangerous-
ness of cocaine to users. Although both experts were of
the opinion that the danger of cocaine had been exag-
gerated, neither felt that the drug was harmless or
advocated its legalization." 86 Ill 2d 251-252.

The court then addressed the defendant's con-
tention that the statutory classification of cocaine
as a narcotic drug was invalid because of the
undisputed fact that cocaine is not medically or
pharmacologically a narcotic. This contention was

rejected on the basis that a legislative body is not legally bound to follow previously existing definitions of terms created by persons in other fields.

The court continued by addressing the issue of whether there was a rational basis for classifying cocaine with narcotics instead of with amphetamines and barbiturates. The following justifications advanced by the state were found by the Illinois Supreme Court to provide a rational basis for the legislature's judgment to classify cocaine with "true" narcotic substances for the purposes of imposing penalties:

(1) The enormous profit from illegal cocaine traffic has led to a great deal of crime, including violent crime, as major importers and dealers compete with each other.

(2) There is a strong correlation between the use of cocaine and the use of heroin and the opiates.

(3) There is a potential for harm inherent in the illegal use of cocaine. In this connection, the court cited studies showing that the use of cocaine may cause depression, nervousness, fatigue, sleepiness, hunger, hallucinations, psychosis, psychological dependence and even death. Quoting from Welti, *Death Caused by Recreational Cocaine Use,* 24 Journal of the American Medical Association 2519, 2522 (1979), it noted:

" 'This report again demonstrates that cocaine cannot be regarded as a safe recreational drug despite current belief and legal controversy.' Welti, *Death Caused by Recreational Cocaine Use,* 24 J.A.M.A. 2519, 2522 (1979)." 86 Ill 2d 256; 427 NE2d 151.

(4) There is a danger inherent in the increase in the practice of smoking coca paste or freebase cocaine.

The court concluded:

"Under the Federal Controlled Substances Act (21
USC 801 *et seq.),* cocaine is listed as a narcotic drug,
along with the opiates, for penalty purposes. It is also
treated as a 'narcotic drug' by the Uniform Narcotic
Drug Act, which has been adopted by the great major-
ity of State legislatures. Moreover, our research has
revealed that all courts which have dealt with the
identical issue, with the exception of one trial court in
the State of Michigan, have upheld the classification of
cocaine as a 'narcotic' for penalty purposes." (Citations
omitted.) 86 Ill 2d 258.

We agree with the Illinois Supreme Court's
decision. While cocaine use is becoming more and
more acceptable in our society, the health conse-
quences of such use remain in doubt. This distin-
guishes the present case from the Supreme Court's
analysis of marijuana in *People v Sinclair, supra.*
We conclude that the Legislature did not create an
irrational classification by placing cocaine in
schedule 2 along with narcotic drugs.

We also reject defendant Key's claim that the
Public Health Code of 1978, art 7, violates the
title-object clause of the Michigan Constitution.
See *People v Trupiano,* 97 Mich App 416; 296
NW2d 49 (1980), *lv den* 409 Mich 895 (1980).

Defendants next contend that the jury selection
procedure used in this case restricted their exer-
cise of peremptory challenges in violation of GCR
1963, 511.5. We agree.

The jury selection procedure used in this case
was disapproved in *People v Goode,* 78 Mich App
781; 261 NW2d 47 (1977), *lv den* 405 Mich 816
(1979). In *Goode,* this Court held that the violation
was not harmless error such as to necessitate a
showing of harm or prejudice caused thereby.
However, in that case reversal was not warranted
because defense counsel had not directed the trial
judge's attention to the fact that he was violating

the court rule, nor had counsel indicated any dissatisfaction either with the jury selection or with the jury that was impaneled.

The Supreme Court in *People v Miller,* 411 Mich 321; 307 NW2d 335 (1981), reiterated the principle that where a jury selection procedure fails to comply with GCR 1963, 511, and where the procedure is challenged before the selection process begins, reversal is required, even without a showing of prejudice. Defendants in the case at bar preserved the issue with a timely objection. Under the above authority, we are constrained to reverse their convictions and remand for a new trial.

One further issue raised by defendants requires our attention as it is likely to recur on retrial if not addressed here. It concerns the testimony involving one Aldo Chaverest. Briefly, the testimony established that during the July 29, 1980, transaction Key also delivered a manila coin envelope to a third person later identified as Aldo Chaverest. Chaverest was arrested and the envelope was later determined to contain cocaine. This evidence was admitted, over objection, for the purpose of showing Key's knowledge and intent. The jury was instructed that the evidence could be used only in determining Key's intent or absence of mistake or accident. Both defendants assign error to the admission of this testimony.

The general rule is that evidence tending to show the commission of other criminal offenses by the defendant is inadmissible on the issue of his guilt or innocence of the offense charged. *People v DerMartzex,* 390 Mich 410, 413; 213 NW2d 97 (1973). The *DerMartzex* Court stated the following reason for the rule:

"Evidence of other crimes is barred because it has

been decided that whatever probative value such evidence has is outweighed by the disadvantage of diverting the trier of fact from an objective appraisal of the defendant's guilt or innocence. 'This rule of law guards against convicting an accused person because he is a bad man. Barring such evidence prevents the trier of fact from inferring that the accused person is guilty of the charged offense because he has committed other similar acts or crimes.' *People v Matthews,* 17 Mich App 48, 52; 169 NW2d 138 (1969)." 390 Mich 413.

An exception to this rule, the res gestae exception, is set forth in *People v Stoker,* 103 Mich App 800, 807; 303 NW2d 900 (1981), quoting from *People v Scott,* 61 Mich App 91, 95; 232 NW2d 315 (1975):

" ' "It is elementary that the acts, conduct and demeanor of a person charged with a crime at the time of, or shortly before or after the offense is claimed to have been committed, may be shown as a part of the res gestae. Proof of such acts is not rendered inadmissible by the fact that they may tend to show the commission of another crime." *People v Savage,* 225 Mich 84, 86; 195 NW 669 (1923).' "

The trial court, prior to admission of evidence under the res gestae exception, should find that the evidence is relevant and that the probative value outweighs any prejudicial effect. *People v Stoker, supra,* p 807. In the instant case, Officer Mangum's testimony regarding Key's delivery of the envelope to Chaverest was part of the res gestae of the charged offense, and was properly admitted. However, the testimony regarding Chaverest's subsequent arrest and the contents of the envelope seized from him did not involve acts or conduct of the accused at the time the charged

offense was committed. This latter evidence was not properly admissible under the res gestae exception.

It is therefore necessary to determine whether the testimony regarding Chaverest's arrest and the contents of the envelope seized from him was admissible as evidence of similar acts. MRE 404(b), MCL 768.27; MSA 28.1050.

When sought to be admitted, similar acts evidence must exhibit four essential characteristics: (1) there must be substantial evidence showing that defendant committed the other act; (2) the evidence of the other act must tend to prove a purpose permitted under the rule; (3) the purpose must be a material issue in the case; and (4) the probative value of the evidence to be admitted must outweigh its prejudicial effect. *People v Gilbert,* 101 Mich App 459, 472; 300 NW2d 604 (1980); *People v Rohn,* 98 Mich App 593, 601; 296 NW2d 315 (1980), *lv den* 410 Mich 876 (1980).

In the present case, the trial court admitted the challenged evidence for the limited purpose of showing that defendant had knowledge that the envelope he delivered to Officer Mangum contained cocaine. However, we find that, while knowledge and intent are permitted purposes under MRE 404(b), those elements were not contested issues in the case. Key and Kaigler did not claim lack of intent, but asserted that they had not been involved in any drug transaction with Officer Mangum. The challenged testimony had little, if any, probative value and was highly prejudicial. The evidence should not be admitted on retrial.

As to the balance of the issues raised, we find that they are either without merit or need not be addressed in light of our disposition.

Reversed and remanded for a new trial.

V. J. BRENNAN, J. *(concurring in part; dissenting in part)*. I agree with the majority's disposition of the issues regarding defendants' constitutional challenges to the statute under which they were convicted. I also concur in the findings relating to the jury selection error because of the clear mandate of *People v Miller,* 411 Mich 321; 307 NW2d 335 (1981).

However, I do not concur in the majority's finding that Officer Mangum's testimony regarding Chaverest's arrest and the contents of the envelope seized from him which he had purchased from Key was not admissible. Chaverest's purchase was contemporaneous with Officer Mangum's purchase and Chaverest was arrested immediately after leaving the scene of the delivery involved herein and the cocaine was taken from him. The majority's position is that, because the defense was noninvolvement with this officer and the defendants did not claim lack of intent, the prosecutor could not or need not introduce this evidence showing knowledge and intent since these were not material issues in the case. I cannot subscribe to this theory. The prosecutor has the obligation, regardless of the defense, to prove each and every element of the offense beyond a reasonable doubt and knowledge and intent are necessary elements. Defendant's position or defense is not relevant or controlling on the prosecutor's obligation to prove these elements. These are always material issues.